IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DEBBIE NICHOLSON                                                                                    PLAINTIFF

VS                                                                                            NO.: 1:06CV15

ROTECH HEALTHCARE, INC.                                                                      DEFENDANT

## ORDER

This cause comes before the court on the motion of defendant Rotech Healthcare, Inc. ("Rotech") for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Debbie Nicholson has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is a wrongful termination action arising out of plaintiff's former employment at defendant Rotech's Amory, Mississippi facility. Plaintiff worked as a location manager for Rotech, which is in the business of providing home medical and respiratory equipment and services. Defendant contends that plaintiff was fired as a result of a July 16, 2003 location inspection which revealed numerous deficiencies in her office management practices and in her personal conduct. Plaintiff, by contrast, contends that she was fired for refusing to participate in illegal activity, specifically fraud in the preparation of documents which were to be submitted to Medicare. Feeling aggrieved, plaintiff filed the instant action in the Circuit Court of Monroe County, Mississippi on July 14, 2004. Plaintiff amended her complaint on November 14, 2005, and defendant removed the case on the basis of federal question jurisdiction. See 28 U.S.C. §

1

1331. Defendant has presently moved the court for dismissal of all of plaintiff's claims on summary judgment.

Prior to addressing the summary judgment motion, the court would note that plaintiff initially failed to respond to the motion and only did so after prodding from this court. Plaintiff has now responded to the motion, but she has failed to address most of the arguments raised in defendant's brief. Plaintiff apparently seeks relief under Title VII and the False Claims Act,[1] but she has not even attempted to rebut defendant's arguments that she failed to follow the procedural and evidentiary pre-requisites for maintaining such actions. The court finds defendant's arguments on these issues to be persuasive, and any Title VII and/or False Claims Act claims asserted by plaintiff will therefore be dismissed. Plaintiff also fails to substantively address defendant's argument that the provision in its employee handbook which specifically preserves its right to terminate employees at will precludes any contract-based wrongful termination action. *See, e.g. Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987). The court agrees with defendant that the aforementioned provision precludes other provisions in the handbook (such as provisions relating to disciplinary procedures) from negating the at-will nature of her employment. Plaintiff does not attempt to distinguish the *Perry* decision relied upon by defendant, and the court agrees that this authority supports dismissal of any contract-based claims relating to plaintiff's termination.

The one argument raised by defendant which has been seriously contested by plaintiff relates to her argument that she was fired for refusing to participate in illegal activity.

---

[1] Plaintiff's amended complaint was less than specific regarding which federal laws she alleges were violated, but, in her brief, plaintiff does not dispute defendant's contention that she sought recovery under Title VII and/or the False Claims Act.

Mississippi law generally permits employers to terminate their at-will employees for any reason, but the Mississippi Supreme Court created a "narrow public policy exception" to that rule in *McArn v. Allied Bruce- Terminix Co. Inc.*, 626 So.2d 603, 607 (1993). *McArn* created a tort action in favor of an at-will employee who is discharged for "refus[ing] to participate in an illegal act" or for "reporting illegal acts of his employer." *Id.* Significantly, an illegal act, in the context of *McArn*, is one which necessarily "warrant[s] the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes*, 907 So.2d 357, 360 (Miss.2004); *see also Wheeler v. B.L. Development Corp.*, 415 F.3d 399, 404 (5th Cir.2005)(reported activity must be criminal to implicate the *McArn* exceptions).

In asserting wrongful termination under *McArn*, plaintiff testified in her deposition that her former co-worker Penny Edwards asked her to place "sticky notes" on Certificates of Medical Necessity (CMN) and that she refused to do so. The parties appear to agree that CMNs are forms which are to be filled out by doctors which verify that medical equipment and/or services are medically necessary and thus reimbursable by Medicare. Plaintiff testified in her deposition that Edwards asked her to use "sticky notes" containing diagnosis codes "so she would know when she got to the doctor's office if they asked her what kind of code, if they didn't want to pull the chart she could tell them." In the court's view, plaintiff may well have succeeded in creating fact issues as to whether suspect activity was taking place at the Rotech facility. The court would note that plaintiff has done very little to establish the criminality of the alleged use of "sticky notes" on CMNs,[2] but it will assume, purely for the sake of argument, that the practice

---

[2]Although neither party cites authority on this issue, it seems clear to this court that a Rotech employee's actually filling out Medicare documents which should be filled out by doctors would be illegal and possibly criminal (although this is not clear to the court). The use of "sticky

is illegal and possible criminal.

At any rate, regardless of the criminality (or lack thereof) of the practice of putting sticky notes on CMNs, plaintiff has completely failed to offer proof which might establish fact issues regarding whether she was *terminated* for refusing to participate in such activities. Indeed, plaintiff made it clear in her deposition that Penny Edwards was not her supervisor, and she has produced no proof indicating that the decision-makers regarding her termination were aggrieved by her refusal to violate Medicare regulations. To the contrary, plaintiff appears to harm her own case by emphasizing in her affidavit that Rotech had provided extensive training to its employees regarding the proper means for filling out CMNs, to wit:

> Rotech had provided training on CMN compliance and the use of "sticky notes" was in violation of what Rotech had instructed. ... Due to my training by Rotech and my knowledge of their rules and regulations and my understanding of Medicare and Medicaid regulations, I could not and would not do anything against the rules and regulations pertaining to the CMNs and made every effort to get other employees to do the same. Penny Walls[3] worked the marketing side and would not follow these instructions continually violating the rules and undermining me which led to the lies which led to Billy Estes' wrongful report.

Plaintiff's own deposition testimony and affidavit thus support a conclusion that defendant made

---

notes" would seem to lie in something of a "gray area," however, since a doctor would presumably be filling out the paperwork, albeit with seemingly improper "hints" being provided by non-physicians. It is not clear to this court that the mere act of providing diagnosis codes would be improper, assuming that the physician was doing the actual diagnosing. While the court is assuming for the sake of argument that the practice in question was illegal and possibly criminal, the court would emphasize that plaintiff has failed to establish that this is the case. The weakness of plaintiff's proof on this issue is highlighted by the statement in plaintiff's brief that "the news media is continually providing coverage of medicare fraud that gets someone put in jail." Needless to say, such anecdotal accounts are insufficient to establish the criminality of the alleged practices in this case.

[3]The court will assume that "Penny Walls" is the same "Penny Edwards" referenced in plaintiff's deposition testimony although, as with so much in plaintiff's case, this is unclear.

extensive efforts to educate its employees on how to comply with applicable Medicare laws. Plaintiff provides no evidence indicating that this was merely a sham and that Rotech secretly wanted its employees to violate these laws. In sum, plaintiff has done nothing more than cite instances in which one employee who lacked managerial authority over her asked her to violate company policy, and she has done nothing to connect this incident to her termination.

Defendant, by contrast, has produced extensive evidence that plaintiff was terminated for causes unrelated to her alleged refusal to violate Medicare laws. On July 16, 2003, Rotech's area manager, Billy Estes, went to the Amory, Mississippi facility in order to investigate allegations that the office was unorganized and to investigate claims of racial slurs made by plaintiff. The court will quote directly from defendant's version of the events which led to plaintiff's termination:

> 7. On July 16, 2003, area manager, Billy Estes, went to the Amory, Mississippi location ("location") per the orders of his superiors for the purpose of performing a location evaluation based on claims that the office was unorganized, and to investigate claims of racial slurs made by Plaintiff (Exhibit 3: Employee Performance Counseling Report; Exhibit 6: Estes, pp. 38-40).
>
> 8. Upon Mr. Estes' arrival and inspection of the location, he found the location in disarray with patient files laid everywhere. He found there to be no order in the filing, and files to be "placed around on top of anything with a horizontal surface...". He also found the location to be "very dirty and unkept, trash bins overflowing," and the warehouse containing medical equipment in a condition where the dirty and clean equipment were mixed together. Furthermore, Mr. Estes found there to be Medicaid claims that had not been filed in time for Rotech to be reimbursed for payment, and petty cash and cash register to have a $78.00 discrepancy. (Exhibit 3: Employee Performance Counseling Report; Exhibit 6: Estes, pp. 39-40).
>
> 9. Mr. Estes also conducted interviews with the location employees as to the allegations that Plaintiff had been making racial slurs in the offices of doctors (i.e., clients), and within the location. Mr. Estes received two statements during this investigation which stated that Plaintiff had made racial slurs in doctor's

5

offices and at the workplace. (Exhibit 3: Employee Performance Counseling Report; Exhibit 9: Statement of Penny Edwards; Exhibit 10: Statement of Tammy Gaskin).

10.     When Mr. Estes tried to discuss his findings with Plaintiff on the day of the inspection, Plaintiff was "just very belligerent, very angry that I [Mr. Estes] was questioning her on all of these things; and she just kept stating that she wrote on the - on her counseling form, that she does the best she could - it was all - it was because other people weren't doing her job that she was being terminated." (Exhibit 6: Estes, pp. 41-42).

11.     After these findings, Mr. Estes then contacted Tim Pigs, Seleta Lovell and Kathy Hood to discuss his findings at the location on July 17, 2003. (Exhibit 6: Estes, pp. 22, 43; Exhibit 11: Deposition of Kathy Hood, pp. 20-22, 25-26). During this telephone conversation it was agreed that immediate termination of Plaintiff was justified. (Id.).

12.     Plaintiff was then terminated based on "improper personal conduct, not meeting performance standards, insubordination, violation of safety rules, and failure to ensure good housekeeping practices. (Exhibit 3: Employee Performance Counseling Report).

In response to this extensive evidence of poor job performance, plaintiff offers a rather tepid defense.

In her deposition, plaintiff initially testified that she could not recall whether she had made the racial slurs alleged by defendant:

> Q:     Did you have any racial comments in front of Dr. Price or any of his nurses or employees?
> A:     Not that I am aware of. I don't remember if I did.
> Q:     So it could have happened, you're just not sure?
> A:     I mean if it happened I don't remember it ever, you know.

(Plaintiff's Deposition, p. 96). While plaintiff later denied the incident in more forceful terms, her initial response does not lend itself to confidence in her version of the events surrounding her termination. Plaintiff also provided a less than vigorous defense of her office management practices, which, in the court's view, tends to support defendant's stated reasons for her

6

termination.  The court would also note that, while Estes' inspection appears to have played the greatest role in plaintiff's termination, plaintiff conceded in her deposition that she had never met him prior to his inspection.  Plaintiff therefore has little if any circumstantial evidence connecting her termination with the allegedly illegal activity involving Penny Edwards.  The court therefore concludes that plaintiff has failed to present any evidence supporting the causation element of her *McArn* claims, and these claims are, like the others raised in her complaint, due to be dismissed.

In light of the foregoing, it is ordered that defendant's motion for summary judgment [54-1] is granted.

A separate judgment to that effect shall issue this day, in accordance with Fed. R. Civ. P. 58.

SO ORDERED, this the 4th day of June, 2007.

                                        **/s/ Michael P. Mills**
                                        **CHIEF JUDGE**